## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| MARY ANN ROE f/k/a<br>MARY DIEHL,<br><br>       Plaintiff,<br><br>v.<br><br>GC SERVICES, L.P.,<br><br>       Defendant. | )<br>)<br>)<br>)<br>)   11-CV-2177 JAR/DJW<br>)<br>)<br>)<br>)<br>) |

### COMPLAINT

NOW COMES the Plaintiff, MARY ANN ROE f/k/a MARY DIEHL, by and through her attorneys, LARRY P. SMITH & ASSOCIATES, LTD., and for her complaint against the Defendant, GC SERVICES, L.P., Plaintiff states as follows:

### I.   PRELIMINARY STATEMENT

1. This is an action for actual and statutory damages for violations of the Fair Debt Collection Practices Act (hereinafter "FDCPA"), 15 U.S.C. §1692, et seq.

### II.   JURISDICTION & VENUE

2. Jurisdiction arises under the FDCPA, 15 U.S.C. §1692 et seq., and pursuant to 28 U.S.C. §1331 and 28 U.S.C. §1337.

3. Venue is proper in this district pursuant to 28 U.S.C. §1391(b).

### III.   PARTIES

4. MARY ANN ROE f/k/a MARY DIEHL, (hereinafter, "Plaintiff") is an individual who was at all relevant times residing in the City of Lawrence, County of Douglas, State of Kansas.

5. The debt that Plaintiff was allegedly obligated to pay was a debt allegedly owed by Plaintiff to Chase Home Finance (hereinafter "Chase.")

6. The debt that Plaintiff allegedly owed Chase was for a mortgage on Plaintiff's residence.

7. At all relevant times, Plaintiff was a "consumer" as that term is defined by 15 U.S.C. §1692a(3).

8. GC SERVICES, L.P., (hereinafter, "Defendant") is a business entity engaged in the collection of debt within the State of Kansas. Defendant is registered as a Limited Partnership in the State of Kansas.

9. The principal purpose of Defendant's business is the collection of debts allegedly owed to third parties.

10. Defendant regularly collects, or attempts to collect, debts allegedly owed to third parties.

11. During the course of its efforts to collect debts allegedly owed to third parties, Defendant sends to alleged debtors bills, statements, and/or other correspondence via the mail and/or electronic mail and initiates contact with alleged debtors via various means of telecommunication, such as the telephone and facsimile.

12. At all relevant times, Defendant acted as a debt collector as that term is defined by 15 U.S.C. §1692a(6).

13. At all relevant times, Defendant acted through its duly authorized agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers.

## IV.  ALLEGATIONS

14. On or about November 18, 2010, Defendant sent Plaintiff a correspondence in an attempt to collect a debt allegedly owed by Plaintiff to Chase. (See a true and exact copy of said correspondence attached hereto as **Exhibit A**).

15. The aforesaid correspondence was Defendant's initial communication with Plaintiff.

16. On or about November 26, 2010, and within thirty (30) days of receiving the aforementioned correspondence, Plaintiff sent a correspondence to Defendant. (See a true and exact copy of said correspondence attached hereto as **Exhibit B**).

17. Defendant received the aforementioned correspondence.

18. In the aforesaid correspondence, Plaintiff requested that Defendant provide her with documentation relative to the debt on which it was attempting to collect.

19. In the aforesaid correspondence, Plaintiff further informed Defendant that she disputed the validity of the debt on which it was attempting to collect.

20. On or about December 15, 2010, Defendant sent a correspondence to Plaintiff. (See a true and exact copy of said correspondence attached hereto as **Exhibit C**).

21. Defendant enclosed within the aforesaid correspondence documentation that purportedly verified the debt on which Defendant was attempting to collect.

22. The aforesaid documentation that purportedly verified the debt included a copy of Plaintiff's original loan documents that she allegedly signed with Chase.

23. The aforesaid documentation failed to provide Plaintiff with documentation to verify the current amount of the debt she allegedly owed.

24. As such, Defendant failed to verify the debt on which it was attempting to collect.

25. Notwithstanding that Defendant failed to verify the debt on which it was attempting to collect, Defendant's correspondence to Plaintiff, dated December 15, 2010, contained a further attempt to collect the debt Plaintiff allegedly owed to Chase.

26. On or about December 20, 2010 and on or about January 8, 2011, Plaintiff sent additional letters to Defendant in a further attempt to obtain documentation to validate the debt on which it was attempting to collect.

27. On or about December 29, 2010, Defendant sent a correspondence to Plaintiff in a further attempt to collect the debt she allegedly owed. (See a true and exact copy of said correspondence attached hereto as **Exhibit D**).

28. Notwithstanding that Defendant failed to verify the debt on which it was attempting to collect, Defendant's correspondence to Plaintiff, dated December 29, 2010, contained a further attempt to collect the debt Plaintiff allegedly owed to Chase.

29. The aforesaid documentation, again, failed to provide Plaintiff with documentation to verify the amount of the debt she allegedly owed.

30. To date, Defendant has failed to provide Plaintiff with the adequate documentation she requested to verify the debt on which it was attempting to collect.

31. On or about December 1, 2010, Plaintiff initiated a telephone call to Defendant wherein Plaintiff offered $8,000.00 to Defendant to settle the debt on which it was attempting to collect.

32. In response, Defendant informed Plaintiff that it would not accept Plaintiff's settlement offer but that it would settle the debt with Plaintiff for $20,000.00.

33. Plaintiff then asked to speak to a supervisor at Defendant and Plaintiff was transferred to another duly authorized representative of Defendant who was identified as a supervisor.

34. Defendant's duly authorized representative who was identified as a supervisor told Plaintiff "[w]hen you talk to a supervisor, it is going to cost you more money."

35. Defendant then said that Plaintiff could now only settle the debt for $22,000.00.

36. Defendant's representation that Plaintiff had to pay more to settle the debt she allegedly owed if she entered into a settlement agreement with a supervisor was false, deceptive and/or misleading given that Defendant had neither the power nor authority to increase a settlement offer to Plaintiff by the mere fact that Plaintiff was speaking to a supervisor rather than a non-supervisor at Defendant.

37. Defendant's representation that Plaintiff had to pay more to settle the debt she allegedly owed if she entered into a settlement agreement with a supervisor was a statement the natural consequence of which was to unjustly condemn and vilify Plaintiff for her non-payment of the debt she allegedly owed.

38. Defendant's representation that Plaintiff had to pay more to settle the debt she allegedly owed if she entered into a settlement agreement with a supervisor was a statement the natural consequence of which was to produce an unpleasant and/or hostile situation between Defendant and Plaintiff.

39. On or about January 19, 2011, Plaintiff's counsel sent a correspondence to Defendant notifying Defendant that it represented Plaintiff with respect to the debt on which Defendant was attempting to collect. (See a true and exact copy of said correspondence attached hereto as **Exhibit E**).

40. Upon information and belief, Defendant received the aforesaid correspondence.

41. The aforesaid correspondence provided Defendant with Plaintiff's counsel's contact details.

42. Again, on or about February 9, 2011, Plaintiff's counsel sent a correspondence to Defendant notifying Defendant that it represented Plaintiff with respect to the debt on which Defendant was attempting to collect. (See a true and exact copy of said correspondence attached hereto as **Exhibit F**).

43. The aforesaid correspondence, again, provided Defendant with Plaintiff's counsel's contact details.

44. Upon information and belief, Defendant received the aforesaid correspondence.

45. Prior to February 25, 2011, Defendant was aware that Plaintiff was represented by counsel with respect to the debt on which it was attempting to collect.

46. Despite being advised that Plaintiff was represented by an attorney, on or about February 25, 2011, Defendant sent Plaintiff a correspondence in a further attempt to collect on the debt she allegedly owed. (See a copy of the aforesaid correspondence attached hereto and incorporated by reference as **Exhibit G**).

47. Prior to March 2, 2011, Defendant was aware that Plaintiff was represented by counsel with respect to the debt on which it was attempting to collect.

48. Despite being advised that Plaintiff was represented by an attorney, on or about March 2, 2011, Defendant sent Plaintiff a correspondence in a further attempt to collect on the debt she allegedly owed. (See a copy of the aforesaid correspondence attached hereto and incorporated by reference as **Exhibit H**).

49. At no time has Plaintiff's counsel failed to respond to a communication from Defendant.

50. Plaintiff's counsel did not consent to Defendant having direct communication with Plaintiff.

51. In its attempts to collect the debt allegedly owed by Plaintiff to Chase, Defendant violated the FDCPA, 15 U.S.C. §1692, in one or more of the following ways:

   a. Communicated with the consumer after the debt collector knew the consumer was represented by an attorney with regards to the subject debt and has knowledge of, or can readily ascertain, such attorney's name and address and said attorney did not fail to respond within a reasonable period of time to communications from the debt collector, in violation of 15 U.S.C. §1692b(6);

   b. Communicated with the consumer despite knowing that the consumer was represented by an attorney with respect to the debt allegedly owed by Plaintiff and said attorney had not consented for Defendant to have direct communication with Plaintiff in violation of 15 U.S.C. §1692c(a)(2);

   c. Engaged in conduct the natural consequence of which is to harass, oppress or abuse any person in connection with the collection of a debt in violation of 15 U.S.C. §1692d;

   d. Used false, deceptive, misleading and unfair or unconscionable means to collect or attempt to collect an alleged debt in violation of 15 U.S.C. §1692e;

   e. Used any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning the consumer in violation of 15 U.S.C. §1692e(10);

   f. Used unfair and/or unconscionable means to collect or attempt to collect a debt in violation of 15 U.S.C. §1692f;

   g. Continued to attempt collection of the debt allegedly owed by the consumer despite having failed to mail to the consumer verification of the debt by the original creditor or the name and address of the original creditor in response to receiving a timely written notification from the consumer that the debt was disputed or notification that the consumer requests the name and address of the original creditor in violation of 15 U.S.C. §1692g(b); and,

   h. Was otherwise deceptive and failed to comply with the provisions of the FDCPA.

52. As a result of Defendant's violations as aforesaid, Plaintiff has suffered, and continues to suffer, personal humiliation, embarrassment, mental anguish and emotional distress.

### V. JURY DEMAND

53. Plaintiff hereby demands a trial by jury on all issues so triable.

54. The Plaintiff, MARY ANN ROE f/k/a MARY DIEHL, by and through her attorneys, Larry P. Smith & Associates, Ltd., hereby respectfully requests that the trial of this matter proceed in Kansas City.

### VI. PRAYER FOR RELIEF

WHEREFORE, Plaintiff, MARY ANN ROE f/k/a MARY DIEHL, by and through her attorneys, respectfully prays for judgment as follows:

    a. All actual compensatory damages suffered;

    b. Statutory damages of $1,000.00;

    c. Plaintiff's attorneys' fees and costs;

    d. Any other relief deemed appropriate by this Honorable Court.

Respectfully submitted,
**MARY ANN ROE f/k/a MARY DIEHL**

By:    s/ D. Matthew Durgin
       Attorney for Plaintiff

Dated: March 24, 2011

D. Matthew Durgin (Atty. No.: 21557)
LARRY P. SMITH & ASSOCIATES, LTD.
8508 W. 90th Terrace
Overland Park, KS 66212
Telephone: (913) 908-2313
              (312) 222-9028
Facsimile: (888) 418-1277
E-Mail: mdurgin@smithlaw.us